❐ Original          ❐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case |
| Information associated with Verizon cellular | ) | No.23-1812M(NJ) |
| numbers 414-293-7508 and 773-896-6243 | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     10/24/2023     *(not to exceed 14 days)*

❐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Nancy Joseph     .

*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❐ for _____ days *(not to exceed 30)*   ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 10/10/2023 @ 12:56 p.m.

*Judge's signature*

City and state:    Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

## Matter No. 2022R00208

This warrant applies to records and information associated with the cellular devices assigned call numbers **414-293-7508** ("**Target Cellular Phone 2**" or "**TCP-2**") and **773-896-6243** ("**Target Cellular Phone 3**" or "**TCP-3**"), that is in the custody or control of Verizon (the "Service Provider" or "Provider"), a wireless communications service provider located at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

### Matter No. 2022R00208

**I.     Information to be Disclosed by the Service Provider**

For **414-293-7508 (TCP-2)**, from February 20, 2023, through August 27, 2023, and

For **773-896-6243 (TCP-3)**, August 15, 2023, through August 27, 2023,

the Service Provider is required to disclose the following records and other information, if available, to the United States:

**A.     Subscriber Information and Call Detail Records:**    The following information about the customers or subscribers of the accounts listed Attachment A:

1.     Subscriber/customer names (including user names and screen names);

2.     Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.     Local and long-distance call detail and tolls records for the Account;

4.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions (data records);

5.     Length of service (including start date) and types of service utilized;

6.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.     Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.**     **Cell-Site/Tower Records:**  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the accounts listed in Attachment A, including:

1.     Records of user activity for each connection made to or from the Target Phone, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses (IPV6 data records);

2.     Information about each communication sent or received by the Target Phone, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3.     All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4.     All historical GPS or other precision location information associated with the Account listed in Attachment A, including Real-Time Tool (RTT) data, LOCDBOR records, and Timing Advance Data.

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving DIAUNTE SHIELDS, LASHAWN DAVIS, and/or any other known or unknown co-conspirators, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, vehicle repair shops, VINs and titles, the transportation of vehicles, money transfers, gun possession, and drug trafficking;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Information associated with Verizon cellular<br>numbers 414-293-7508 and 773-896-6243** | )<br>)<br>)<br>)<br>)<br>) | Case No.<br>23-1812M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 511, 922(g),<br>1029, 1956, 1957, 2312, 2313,<br>and 21 USC §§ 841(a) & 846 | Conspiracy, Altering VINs, Possession of a Firearm by a Felon, Access Device<br>Fraud, Money Laundering, Transportation of Stolen Vehicles, Sale/Receipt of<br>Stolen Vehicles, Possessing with Intent to Distribute Drugs, Drug Conspiracy |

The application is based on these facts:

See Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Shane Hoffmann
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 10/10/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

1.        I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers **414-293-7508** ("**Target Cellular Phone 2**" or "**TCP-2**") and **773-896-6243** ("**Target Cellular Phone 3**" or "**TCP-3**"). The service provider for **TCP-2** and **TCP-3** is Verizon (the "Service Provider"), a wireless telephone service provider located at 180 Washington Valley Road, Bedminster, NJ 07921. The listed subscriber for **TCP-2** is AMYA WILLIAMS. There is no listed subscriber name for **TCP-3**. **TCP-2 and TCP-3** are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.        I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015.  I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws.  I have participated in the execution of search warrants in various judicial districts, including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed

the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3.     The United States, including the FBI, is conducting a criminal investigation DIAUNTE D. SHIELDS (DOB: 02/18/1995), LASHAWN DAVIS JR. (DOB: 05/07/2000), and others known and unknown, regarding possible violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy).

4.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5.     This investigation involves, among other crimes, the organized theft and resale of high-end motor vehicles. I know from my training and experience that there is a large amount of money associated with the theft and sale of high-end motor vehicles. I

also know that high-end vehicles over the retail price of $50,000 have means of identifying the vehicle other than vehicle identification number (VIN) plates and stickers, such as: hidden VIN stamps, identifying parts numbers, etching on glass windows, and electronic data stored in the vehicle's Electronic Control Unit (ECU). Based on this investigation, I believe that the auto theft ring with which SHELDS and DAVIS are involved is replacing the stolen vehicles' VIN plates and VIN stickers but not changing the hidden identifying features.

## Vehicle Thefts

6.      Forensic evidence and cellular records for DAVIS's known phone number have linked DAVIS to several vehicles stolen from the Milwaukee General Mitchell International Airport in early 2022. In the fall and winter of 2022, law enforcement surveillance routinely observed DAVIS associated with stolen vehicles, some of which had altered VINs, around the Milwaukee area. One example of DAVIS's involvement with a stolen vehicle is as follows.

7.      On March 20, 2022, shortly after 1:00 p.m., the MCSO was alerted to a Dodge Ram pickup truck bearing Missouri license plate 8KBJ78 and VIN 3C63R3RL5LG219772 leaving the parking structure at the Milwaukee General Mitchell International Airport.

8.      Deputy D. Scott of the MCSO responded and positioned his squad car in front of the parking lane where the Dodge Ram pickup truck was located, exited his

3

squad, and observed the rear passenger window was broken or missing, consistent with someone attempting to steal the vehicle by breaking the window and entering the vehicle. Deputy Scott exited his squad and ordered the driver to get out of the vehicle. The driver of the Ram pickup truck attempted to flee, struck another vehicle, and then struck a boulder. The driver exited and fled on foot back into the parking structure. Deputies observed a subject, later identified as DAVIS, in the parking structure sweating and breathing heavily with gravel and debris on his forearms.

9.      The Ram pickup truck owner, later identified as A.J.L., did not give consent for anyone to take and drive his vehicle from the parking structure.

10.      While on scene, DAVIS said that he came to the parking structure in a black Jeep. Deputies looked in the parking structure for a vehicle matching this description and located a black Jeep driving through the structure and exiting. Deputies stopped a black Jeep Grand Cherokee as it exited the parking structure. The driver and sole occupant was identified as Amya V. Williams (DOB:01/12/2001). Deputies observed the VIN displayed on the windshield to be 1C4RJFBG2LC954690.

11.      According to Wisconsin Department of Transportation records, the VIN 1C4RJFBG2LC954690 was registered to a black 2020 Jeep Grand Cherokee, and the registered owner was Amya V. Williams. However, the VIN plate on the windshield of the Jeep Grand Cherokee was later determined to be a fake VIN. It was determined that the genuine VIN of the Jeep Grand Cherokee was 1C4RJFCTXMC584523.  According to

4

Wisconsin DOT records, the vehicle bearing genuine VIN 1C4RJFCTXMC584523 was actually registered to D.J.J., who did not give consent for anyone to take and drive his vehicle from the parking structure. D.J.J. stated that he parked his vehicle in the parking structure on March 11, 2022. Interflight Parking records show that D.J.J.'s vehicle was removed from the structure on March 13, 2022.

12.     During a custodial interview, DAVIS denied driving the Dodge Ram pickup truck, but admitted that he was at the parking structure to act as a lookout for "Deandre Littles" for $1,500. DAVIS admitted to arriving at the parking structure in the Jeep Grand Cherokee.

13.     On March 21, 2022, law enforcement officers processed both vehicles for evidence. Inside the Jeep Grand Cherokee, deputies located electronic key programming equipment, numerous vehicle key fobs, center punches, which are hand tools with a handle/shaft and pointed tip, other VIN stickers, and documents, including a notebook with handwritten vehicle information. Inside the Ram pickup truck, law enforcement officers located an Advanced Diagnostics brand cable, which is of the same brand as one of the key programmers and a center punch of the same type located in the Jeep Grand Cherokee.

### DAVIS's Association with SHIELDS

14.     The investigation has revealed that DAVIS is a close associate of DIAUNTE D. SHIELDS (DOB: 02/18/1995). An analysis of available phone tolls showed that DAVIS

5

(phone number 708-490-4687, aka TCP-1) and SHIELDS (phone number 404-918-9857) have been in contact with each other since at least June 2021.

15.     On or about January 3, 2022, messages from devon5578@icloud.com, an account linked to SHIELDS, showed the following exchange between SHIELDS and DAVIS's subscribed phone number 708-490-4687 (TCP-1):

> SHIELDS: I know where a trx at
> SHIELDS: I land at 830, we can jump right on it
> …………………
> DAVIS: I'm ready when u ready

Based on my training, experience, and knowledge attained through the investigation, I believe in this exchange SHIELDS and DAVIS are planning to steal a Dodge Ram TRX truck after SHIELDS returned from a trip.

16.     On or about March 20, 2022, messages from devon5578@icloud.com between SHIELDS and DAVIS showed DAVIS reaching out to SHIELDS for help as SHIELDS told DAVIS to hide because the police are everywhere. SHIELDS told DAVIS that SHIELDS was outside and that SHIELDS will come get DAVIS.  I believe that this exchange occurred when DAVIS was caught while attempting to steal a Dodge Ram from Milwaukee General Mitchell International Airport (described previously).  In his attempt to avoid arrest he was reaching out to SHIELDS for assistance.

17.     An email dated November 16, 2022, addressed to jeff071293@icloud.com, an iCloud account linked to SHIELDS, from toolmart@autobodytoolmart.com showed an order confirmation from America's Automotive Supply Source with billing and shipping

6

information for "Shawn Mobile Glass, LASHAWN DAVIS, 1673 S 9th St, Milwaukee, WI." The order was for over $300 for materials related to auto glass repair. A May 2023 search of the Wisconsin Department of Financial Institutions did not return any results for a registered business named "Shawn Mobile Glass." Investigators are aware that the theft of vehicles and the application of new VINs requires the breaking and repair of auto glass. Based on my training, experience, and knowledge gained from the investigation, I believe that DAVIS was using a fictitious business name to have tools and supplies delivered to his residence in furtherance of his criminal activities.

18.     A review of DAVIS's Cashapp transactions shows the transfer of money between DAVIS and SHIELDS, including SHIELDS's known associates, from December 2021 through June 2023 (the end date of requested records). During this timeframe, DAVIS received and/or sent money to SHIELDS, NAKIYA WRIGHT (SHIELDS's girlfriend), CASHA GRIFFIN (SHIELDS's girlfriend), and BRANDON MULLINS (a known associate of SHIELDS). In the timeframe referenced, over $10,000 was transferred between DAVIS and the referenced individuals.

## DAVIS's Firearm Possession and Drug Distribution

19.     A photo with a capture date of November 22, 2022, from jeff071293@icloud.com, an account associated with SHIELDS, showed a partially broken brick of a white substance that resembled cocaine. An apparent black handgun was also observed. Geolocation data resolved to Alexander Lofts, 1673 S. 9th Street. I know that

7

DAVIS utilizes an apartment at that location and had a felony conviction prior to November 2022, making him legally prohibited from possessing firearms.

20.     In January 2023, a Confidential Human Source (CHS) provided information to law enforcement that a person known to the CHS as "Shawn" was involved in the trafficking of heroin, cocaine, fentanyl and crystal methamphetamine. The CHS stated the CHS had known "Shawn" since the summer of 2022, and "Shawn" resided in an apartment complex at the intersection of S 9th Street and W Mitchell Street in Milwaukee, Wisconsin. The CHS was shown a Milwaukee County Sheriff's Department booking photo of DAVIS and positively identified DAVIS as "Shawn."[1]

21.     In February 2023, law enforcement utilized the CHS to conduct a controlled purchase of methamphetamine from DAVIS. Law enforcement met with the CHS prior to the controlled buy and conducted a recorded phone call with DAVIS to facilitate the controlled buy of crystal methamphetamine. The CHS had previously told DAVIS that the CHS was looking to purchase one ounce of crystal methamphetamine. The CHS

---

[1] The CHS has been providing information to the FBI since July 2022, has conducted multiple controlled drug buys, and has provided information that has led to more than 5 federal search warrants which resulted in the recovery of cocaine, heroin and fentanyl. The CHS was questioned and provided information both known and unknown to investigators. The information provided by the CHS was corroborated and was found to be reliable. The CHS has a prior State of Wisconsin conviction for drug trafficking and a firearm offense. The CHS was cooperating in exchange for consideration in connection with arrests and charges for drug trafficking and firearms offenses.

8

reported that DAVIS agreed to sell the crystal methamphetamine and directed the CHS that this would occur at S 9th Street and W Mitchell Street in Milwaukee, Wisconsin.

22. Law enforcement searched the CHS and the CHS's vehicle prior to providing the CHS with $1,400 in prerecorded United States currency for the purchase of one ounce of crystal methamphetamine. The CHS then departed for the parking lot to the northeast of S 9th Street and W Mitchell Street while law enforcement maintained visual surveillance.

23. Surveillance observed DAVIS arrive at the location and park his silver Chevy Impala. DAVIS then entered a furniture store located at 840 W Historic Mitchell Steet, Milwaukee, Wisconsin. The investigation has determined that the furniture store is managed by ESTEBAN CARDENAS. After approximately eight minutes, DAVIS was observed exiting the rear of the furniture store and going towards the CHS's vehicle. DAVIS was observed entering the front passenger seat of the CHS's vehicle and then exited and returned to his vehicle. The CHS departed the location under the direction of law enforcement.

24. When debriefed by law enforcement, the CHS advised that DAVIS came to the CHS's vehicle from the direction of the furniture store. DAVIS provided the CHS with a clear plastic sandwich bag which contained a white crystal substance which the CHS understood to be crystal methamphetamine. The CHS then provided DAVIS with the prerecorded United States currency. Officers recovered the white crystal substance in a

9

clear plastic sandwich bag from the CHS's vehicle and then conducted a search of the CHS's person and vehicle for any money or contraband and did not locate any. The white crystal substance field tested positive for methamphetamine and fentanyl and had a total weight of approximately 14.7 grams.

## DAVIS's iCloud Account

25.     On June 18, 2023, the Honorable United States Magistrate Judge Stephen C. Dries, Eastern District of Wisconsin, authorized a search warrant for the contents of lashawd214@icloud.com. Apple confirmed that the iCloud account lashawd214@icloud.com was created on April 2, 2021, using the name LASHAWN DAVIS, address of 2315 Gunderson, Berwyn, Illinois. Associated phone numbers included 708-490-4687 (TCP-1) and **414-293-7508 (TCP-2)**, both of which investigators have linked to DAVIS.

26.     A review of content returned from Apple for lashawd214@icloud.com showed numerous photographs depicting firearms, apparent illegal drugs, United States currency, financial information, and vehicles as exemplified below:

   a.   Photographs with a capture date of November 7, 2022, depicted an orange Ford Bronco Raptor that matched the vehicle seen by surveillance teams in Milwaukee, Wisconsin, during early November 2022. The dashboard VIN seen on the orange Ford Bronco Raptor in Milwaukee was 1FMEE5JR9NLA58756 which Ford stated was never manufactured.  Shipping records from Cheetah

Cargo Corp indicated that on November 5, 2022, an orange Ford Bronco, matching the orange Ford Bronco from DAVIS's iCloud account, was shipped from Milwaukee, Wisconsin, to Fayetteville, Georgia. On September 6, 2023, investigators in Georgia recovered the orange Ford Bronco and determined that the true VIN was 1FMEE5JR9NLA51323. Using the true VIN, investigators determined that the orange Bronco Raptor was stolen from a Ford assembly plant in Michigan in October 2022.

b. A photograph with a capture date of January 1, 2023, depicted a black male that matches known booking photographs of DAVIS talking a selfie. DAVIS was holding an apparent handgun in his right hand. Location information associated with the photograph resolved to the area of 5211 N Hopkins Street, Milwaukee, Wisconsin. The investigation has shown that SHIELDS, DAVIS, and associates utilized a garage at 5206 N Hopkins Street, Milwaukee, Wisconsin, to process stolen vehicles.

c. A photograph with a capture date of February 20, 2023, depicted a hand holding a white substance wrapped in plastic that was consistent with illegal drugs. Location information associated with the photograph resolved to the area of 840 W Historic Mitchell Street, Milwaukee, Wisconsin. This is the location of Ultimate Home Furniture which was the store managed by ESTEBAN CARDENAS, and where DAVIS went prior to the controlled

11

purchase described above.  The photograph was also taken around the same time frame of the controlled purchase.

d.  A photograph with a capture date of June 9, 2023, depicted a black male that matches known booking photographs of DAVIS fanning an undetermined amount of United States currency in denominations of $50 and $100.  Location information associated with the photograph resolved to 910 W Historic Mitchell Street, Milwaukee, Wisconsin, a known address for DAVIS.

e.  A screenshot showing activity on "briansclub.cm" which is a known underground website to obtain stolen credit card information.  There are also images depicting complete credit card information including card number, expiration date, CVV number, full card holder name, address, phone number, and email address. I believe that this compromised credit card information relates to unsuspecting victims of identity theft.

**DAVIS's La Crosse County Arrest on August 27, 2023**

27.     On August 27, 2023, in La Crosse County, Wisconsin, troopers from the Wisconsin State Patrol attempted a traffic stop on a silver Chevrolet Impala bearing Wisconsin license plate ARF-9505, further referred to as the "silver Chevy Impala."  This was the same silver Chevy Impala that investigators electronically monitored from approximately November 15, 2022, through early February 2023.  The traffic stop was initiated for excessive speed.  The silver Chevy Impala fled, and a pursuit ensued.  The

12

pursuit reached speeds of 100 miles per hour before the lone male subject pulled over and fled the vehicle. During the foot pursuit the male subject threw a package over a fence and hopped the fence before being apprehended. The individual identified himself as LASHAWN DAVIS. The discarded package was recovered and contained a white powdery substance. The substance field tested positive for the presence of cocaine with a total weight of approximately 251 grams.

28. Upon returning to the silver Chevy Impala, troopers noted a marijuana smell. A probable cause search of the vehicle resulted in the recovery of the following items:

    a. Two freezer wrapped packages each containing a brownish/purplish powdery substance found in the trunk. The substance field tested positive for the presence of fentanyl with a total weight of approximately 367 grams.

    b. A large duffel bag with digital scales, a respirator, acetone, blenders, and rolls of packaging found in the trunk.

    c. Wisconsin license plate AHY2464 found in the trunk which returned to a 2018 Dodge Durango reported stolen to the Chicago Police Department with a theft date of June 18, 2023. The registered owner's address was Mt. Pleasant, Wisconsin.

    d. North Dakota license plate 518EAJ which returned to a 2022 white Chevrolet Corvette registered to Tashay Northern using VIN

1G1YC2D48N5118139. Carfax returned no shipping information or window sticker information for the VIN – indications that the VIN is likely fraudulent. Tashay Northern was also the registered owner of a Jeep Trackhawk that was stolen from the Milwaukee General Mitchell International Airport in October 2021. Upon recovery it was determined that the Jeep Trackhawk had its VIN altered.

 e. A 9 mm bullet.

 f. Two Apple iPhones (the review of which is described below).

## Review of the Contents of DAVIS's iPhones

29. On September 14, 2023, the Honorable United States Magistrate Judge Stephen C. Dries, Eastern District of Wisconsin, authorized a search warrant for the two iPhones that were recovered during the traffic stop and subsequent arrest of LASHAWN DAVIS by the Wisconsin State Patrol on August 27, 2023. The phones were designated 1B132 and 1B133.

30. An analysis of 1B132 revealed it is an Apple iPhone 11 with assigned call number 708-490-4687 (TCP-1) and a linked iCloud account of lashawd214@icloud.com. Subscriber information from T-Mobile showed that call number 708-490-4687 (TCP-1) was subscribed to "LASHAWN DAVIS" with an address of 2315 Gunderson Avenue, Berwyn, Illinois. The phone number was activated on April 8, 2022. Investigators were aware that DAVIS utilized call number 708-490-4687 (TCP-1) as on May 16, 2023, the

14

Honorable United States Magistrate Judge William E. Duffin, Eastern District of Wisconsin, authorized a search warrant for records associated with call number 708-490-4687 (TCP-1) from April 8, 2022, through approximately May 16, 2023.

31.     An analysis of 1B133 revealed it is an Apple iPhone 14 Pro Max with assigned call number **414-293-7508 (TCP-2)** and linked iCloud accounts lashawd214@icloud.com and princess2k19@icloud.com.   Subscriber information from Verizon showed that call number **414-293-7508 (TCP-2)** was subscribed to Amya Williams with an address of 1673 S 9th Street, Unit 405, Milwaukee, Wisconsin.  The call number was activated on February 20, 2023.  Williams is a known girlfriend of DAVIS.

32.     An initial review of the 1B132 and 1B133 phones indicated content associated with vehicles, VIN labels, vehicle titles, firearms, drugs, and large amounts of United States currency.   The content is similar to that observed from lashawd214@icloud.com and demonstrates DAVIS's ongoing criminal conduct.

33.     For example, an image on 1B132 with a capture date of August 9, 2023, depicts a public VIN label and door sticker both displaying VIN 1C4RJEBTXLC134011. Additionally, a New Jersey Certificate of Title is shown depicting VIN 1C6SRFU93MN906900 for a 2021 Ram 1500.  Both VINs are likely fraudulent as there are no associated shipping records or Carfax histories.  The location data associated with the photograph resolved to Alexander Lofts, 1673 S 9th Street, Milwaukee, Wisconsin, a known address for DAVIS.

34.     A review of messages from 1B133 revealed a conversation between DAVIS and call number 414-242-6577 who was listed as "First Lady" in the contacts. Based on the conversation, investigators believe the phone is utilized by DAVIS's girlfriend, Amya Williams.  On August 26, 2023, DAVIS told Williams that she might have to Uber from work, to which she replied, "U must be leaving out."  DAVIS replied, "Yea drop this car off and drive the impla back up."  The conversation continues and DAVIS says, "How I'm suppose to cook and get back on time bro I gotta be up by 8 to drop sum off 3hrs away."  The conversation continues into August 27, 2023.  At approximately 1:10 am, Williams tells DAVIS that she loves him and DAVIS replies, "Yea we stealing hold on." At approximately 3:12 am DAVIS texted Williams, "On my way home."

35.     Based on my training, experience, and knowledge of the case, I believe that on August 26, 2023, DAVIS traveled from Milwaukee, Wisconsin, to the Chicago, Illinois, area to pick up the Impala that he was driving when he was arrested on August 27, 2023. While he was in the Chicago area he was also involved in stealing a vehicle.  Around 3:00 am he started traveling back to Milwaukee as he told Williams he was on his way home. Williams had indicated that she had left the door unlocked.  When DAVIS told Williams that he had to drop something off three hours away, I believe he was referring to the trip he was making when he was traffic-stopped and arrested on August 27, 2023 in the area of La Crosse, Wisconsin. A search of Google maps indicates that Milwaukee, Wisconsin

is approximately three and a half hours from Winona, Minnesota, which is where I believe, based on other communications described below, DAVIS was headed that day.

36.     A review of messages from 1B133 also revealed a conversation between DAVIS and call number **773-896-6243 (TCP-3)**.  Investigators determined that **773-896-6243 (TCP-3)** is likely associated with DIAUNTE SHIELDS.  Subscriber information from Verizon showed no associated name and a subscription start date of August 15, 2023.  A review of phone records for CAHSA GRIFFIN and NAKIYA WRIGHT, girlfriends of SHIELDS, indicated significant contact with **773-896-6243 (TCP-3).** GRIFFIN's phone number 708-261-4133 first showed contact with **773-896-6243 (TCP-3)** on August 15, 2023, with contact continuing into October 2023.

37.     The conversation on 1B133 between DAVIS and **773-896-6243 (TCP-3)**, believed to be SHIELDS, started on August 19, 2023, and continued through August 27, 2023.  The conversation indicates that SHIELDS and DAVIS are continuing to work together.  On August 22, 2023, SHIELDS texted DAVIS "1236 S Barclay, Milwaukee, WI 53204" and provided a code. SHIELDS also indicated that the keys were in the gas tank. Based on my training, experience, and knowledge of the case, I believe that a vehicle was being stored at the location and SHIELDS was providing DAVIS with the information needed to retrieve it.

38.     On August 27, 2023, at approximately 9:33 am, SHIELDS texted DAVIS a screenshot of Fleet Farm in Winona, Minnesota, and asked DAVIS, "see how far." At

approximately 10:30 am, DAVIS told SHIELDS he was an hour and twenty minutes out. At approximately 11:17 am SHIELDS responded, "He running late behind you gang 1hr 27. Find a good place to chill by the lo." Based on my training, experience, and knowledge of the case, I believe that SHIELDS was coordinating a meet between DAVIS and an unknown individual at Fleet Farm in Winona, Minnesota, to deliver the suspected narcotics that were seized during DAVIS's traffic stop that day.

39.     As referenced above, investigators have previously obtained records associated with call number 708-490-4687 (TCP-1) from April 8, 2022, through approximately May 16, 2023. With this warrant, investigators seek to supplement these call records by obtaining records for call number **414-293-7508 (TCP-2)** from February 20, 2023, through August 27, 2023, and for call number **773-896-6243 (TCP-3)** from August 15, 2023, through August 27, 2023. The call records, including cellular tower location information, will aid investigators in determining SHIELDS's and DAVIS's travels prior to DAVIS's arrest on August 27, 2023, in addition to assisting in determining SHIELDS's and DAVIS's whereabouts during the commission of criminal activity linked to the enterprise such as the theft, storage, and transport of stolen vehicles and drug trafficking.

40.     Therefore, I have reason to believe that DAVIS and SHIELDS use telephone accounts, including the **Target Cellular Phones**, to facilitate their crimes. Based on this information, and my training and experience, I believe it is likely that the **Target Cellular Phones** identified herein, which DAVIS and SHIELDS used in connection with their

criminal conduct, contain evidence of the crimes under investigation, including the location(s) of the phones' user(s) during commission of the crimes under investigation.

## TECHNICAL BACKGROUND

41.     As further set forth in Attachment B, your affiant is requesting subscriber information and historical location data (including cell-site data) maintained by the Service Provider for the **Target Cellular Phones**, described in Attachment A.

42.     The requested data will allow investigators to compare past locations of the phone(s) associated with the account(s) and will assist in determining whether and to what extent the phone user was in geographical proximity to locations relevant to the investigation of the crimes described above.

43.     In my training and experience, I have learned that the Service Provider listed in Attachment A is a wireless provider that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower

19

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

44. Based on my training and experience, I know that the Service Provider can collect cell-site data about the **Target Cellular Phones** listed in Attachment A. I also know that the Service Provider typically collects and retains cell-site data pertaining to cellular phones to which it provides service in its normal course of business in order to use this information for various business-related purposes.

45. Based on my training and experience, I know that the Service Provider also collects more precise historical location information associated with cellular phones, which may be referred to as Per Call Measurement Data (PCMD), Range to Tower or Real-Time Tool (RTT) data, NELOS records, or Timing Advance Data (TrueCall). This data uses GPS or other technology to estimate an approximate location range of a cellular phone that is more precise than typical cell-site data.

46. Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know

that wireless providers typically collect and retain information about their subscribers'

use of the wireless service, such as records about calls or other communications sent or

received by a particular phone and other transactional records, in their normal course of

business. In my training and experience, this information may constitute evidence of the

crimes under investigation because the information can be used to identify the Target

Cellular Phone's user or users and may assist in the identification of co-conspirators

and/or victims.

## CONCLUSION

47.     Based on the forgoing, I request that the Court issue the proposed search

warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant. The government will execute this

warrant by serving the warrant on the Service Provider. Because the warrant will be

served on the Service Provider, who will then compile the requested records at a time

convenient to it, reasonable cause exists to permit the execution of the requested warrant

at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

### Matter No. 2022R00208

This warrant applies to records and information associated with the cellular devices assigned call numbers **414-293-7508** ("**Target Cellular Phone 2**" or "**TCP-2**") and **773-896-6243** ("**Target Cellular Phone 3**" or "**TCP-3**"), that is in the custody or control of Verizon (the "Service Provider" or "Provider"), a wireless communications service provider located at 180 Washington Valley Road, Bedminster, NJ 07921.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2022R00208**

**I.      Information to be Disclosed by the Service Provider**

For **414-293-7508 (TCP-2)**, from February 20, 2023, through August 27, 2023, and

For **773-896-6243** (**TCP-3)**, August 15, 2023, through August 27, 2023,

the Service Provider is required to disclose the following records and other information, if available, to the United States:

**A.      Subscriber Information and Call Detail Records:**      The following information about the customers or subscribers of the accounts listed Attachment A:

> 1.      Subscriber/customer names (including user names and screen names);
>
> 2.      Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
>
> 3.      Local and long-distance call detail and tolls records for the Account;
>
> 4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions (data records);
>
> 5.      Length of service (including start date) and types of service utilized;
>
> 6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.     Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.**     **Cell-Site/Tower Records:**  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the accounts listed in Attachment A, including:

1.     Records of user activity for each connection made to or from the Target Phone, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses (IPV6 data records);

2.     Information about each communication sent or received by the Target Phone, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3.     All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4.     All historical GPS or other precision location information associated with the Account listed in Attachment A, including Real-Time Tool (RTT) data, LOCDBOR records, and Timing Advance Data.

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving DIAUNTE SHIELDS, LASHAWN DAVIS, and/or any other known or unknown co-conspirators, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, vehicle repair shops, VINs and titles, the transportation of vehicles, money transfers, gun possession, and drug trafficking;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.